**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOSHUA DOUGLAS HENDERSON,

Plaintiff,

v. Case No. 8:23-cv-1907-JLB-SPF

SHERIFF BOB GUALTIERI, *et al.*,

Defendants.
______________________________/

**ORDER**

In this civil rights action, Plaintiff Joshua Douglas Henderson, formerly a pretrial detainee at the Pinellas County Jail (PCJ),[1] raises claims under 42 U.S.C. § 1983. (Doc. 40). He sues three jail officials, Lieutenant Jones, Sergeant Leach,[2] and Corporal Andrew, and four "John Doe" medical providers at the PCJ. (*Id.* at 2−3, 12). Plaintiff contends that: 1) Lt. Jones failed to protect him from threats and harassment by other officers and allowed his placement in restrictive housing without due process; 2) Sgt. Leach failed to protect him from threats and harassment by other officers; 3) Corp. Andrew retaliated against him for filing grievances and informing a judge about his mistreatment at PCJ; and 4) the "John Doe" medical defendants failed to treat his broken hand and mental health issues in retaliation for filing grievances about the

---

[1] Plaintiff is now a prisoner of the Florida Department of Corrections at Charlotte Correctional Institution. (Doc. 49).

[2] In his Second Amended Complaint, Plaintiff identified Sgt. Leach as "Sgt. Leche." (Doc. 16 at 2). In Defendants' Motion to Dismiss, counsel presumes "Sgt. Leche" is actually Sgt. Bryan Leach, a former employee of the Pinellas County Sheriff's Office (Doc. 60 at 1).

medical staff at PCJ. (Doc. 40 at 14−16). Defendants Jones, Leach, and Andrew have moved to dismiss this action for Plaintiff's failure to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA), because they contend Plaintiff's Second Amended Complaint is a shotgun pleading, and because Plaintiff fails to state a claim upon which relief may be granted. (Doc. 60 at 1, 8-24).[3] Plaintiff has responded in opposition, arguing that the administrative remedy process was unavailable to him, that it is improper to decide the exhaustion-of-administrative-remedies issue on a motion to dismiss, that the Second Amended Complaint is not a shotgun pleading, and that he adequately stated a claim for relief against each defendant. (Doc. 68). After careful review, the Court grants Defendants' motion to dismiss.

## I. Pleadings

The relevant facts alleged in Plaintiff's Second Amended Complaint are taken as true and are as follows: Plaintiff was a pretrial inmate at the PCJ. (Doc. 40 at 4). Defendants Jones, Leach, and Andrew were employees of the Pinellas County Sheriff's Office and detention officers at the PCJ. (*Id.* at 2–3, 13). The four "John Doe" defendants were two nurses, a physician, and a mental health provider at PCJ. (*Id.* at 12).

All the events about which Plaintiff complains occurred between August 14,

[3] The "John Doe" medical defendants have neither been identified nor served with process.

2021, and November 5, 2021. (*Id.* at 5, 13). Plaintiff alleges that Lt. Jones "allowed" Plaintiff's placement in "confinement" on August 17, 2021, through November 5, 2021, because of Plaintiff's "outside charges," not because he received a prison disciplinary charge. (*Id.* at 14). Lt. Jones and Sgt. Leach failed to protect Plaintiff from other officers, who were harassing Plaintiff and threatening him with physical violence in retaliation for Plaintiff filing grievances about the officers' mistreating him, interfering with his medical treatment, and denying him privileges. (*Id.* at 14−15). Corp. Andrew retaliated against Plaintiff for filing grievances against him by threatening him with physical violence, throwing a towel in Plaintiff's face, telling him to "suck his d_ _ _," and telling him to kill himself. (*Id.* at 15). Corp. Andrew also retaliated against Plaintiff for telling a judge about the mistreatment he was receiving at the PCJ by throwing Plaintiff's lunch on the ground, thereby depriving him of a meal that day. (*Id.* at 16). And the "John Doe" medical defendants retaliated against Plaintiff for filing grievances against medical staff by refusing to provide treatment for his broken hand and mental health issues. (*Id.*).

For relief, Plaintiff requests punitive and compensatory damages. (*Id.* at 20−21).

**II. Standard of Review for Exhaustion of Administrative Remedies**

Under section 1997e(a) of the Prison Litigation Reform Act (PLRA): "No action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is designed to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002).

The United States Supreme Court has explained that exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. In other words, an institution's requirements define proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, inmates must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008). Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the PLRA's exhaustion requirement. *Johnson v. Meadows*, 418 F.3d 1152, 1157– 59 (11th Cir. 2005).

In *Ross v. Blake*, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion

requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cty.*, 510 F.3d 1312, 1322–23 (11th Cir. 2007)). The *Ross* Court identified three circumstances in which an administrative remedy would be considered "not available." 578 U.S. at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

The Eleventh Circuit instructs district courts to consider an inmate's failure to exhaust in a motion to dismiss. *Bryant*, 530 F.3d at 1374–75 ("[A]n exhaustion defense [] is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.") (internal quotation omitted). In cases like this, in which the defendants allege that a prisoner has not exhausted his administrative remedies,

courts may consider evidence outside the four corners of the complaint. *Id.* at 1377 n.16. Accordingly, the parties may submit documentary evidence concerning the exhaustion issue, and doing so will not require the conversion of the motion to dismiss into one for summary judgment. *Id.* In addition, the district court may resolve factual questions concerning a plaintiff's alleged failure to exhaust as long as the factual disputes do not decide the merits and the parties had sufficient opportunity to develop a record. *Id.* at 1376.

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the reviewing court first considers the factual allegations in a defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court must accept as true—for purposes of adjudicating this motion—the plaintiff's version of the facts. *See Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* If the court determines that the complaint is not subject to dismissal at step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

## III. Discussion

### a. **Pinellas County Jail Grievance Procedure**

Under the PCJ's policy, the PCJ encourages inmates to attempt to resolve their grievances informally:

> Informal resolution between the inmate and the staff member is strongly encouraged. Generally, an informal resolution can resolve a complaint filed by an inmate. A verbal or written complaint can be resolved without a grievance being filed.

(*See* Doc. 60–2 at 1).

If an inmate's grievance cannot be resolved informally, the inmate must file a formal grievance. (*Id.*). To do so, an inmate must first use a kiosk in the inmate's housing area to complete a "Permission." (*Id.*). In the Permission, the inmate must state the nature of his complaint and the specific remedy he seeks. (*Id.*). Deputies are required to screen a filed Permission in case there is an immediate safety or security concern. (*Id.*). If there is no such concern, the deputies forward the Permission to either the shift commander or the shift supervisor, who determines if the Permission warrants a grievance. (*Id.* at 1–2). If a Permission is approved, the supervisor informs the inmate of the steps required to submit a grievance. (*Id.* at 2).

The inmate then has three business days to file the written grievance. (*Id.*). The supervisor must respond "as quickly as possible," but no longer than five business

days after receiving the grievance.[4] (*Id.*). The response period may be extended if "extensive research and documentation" are required. (*Id.*).

If the inmate is dissatisfied with the response to the grievance, he may file an appeal with the Department Commander within five business days of receiving the response. (*Id.*). The appeal is submitted on a kiosk using the "Grievance Appeal" category. (*Id.*). If the kiosk is unavailable, the inmate may use an Administrative Remedy Form to submit the appeal. (*Id.*). And if the inmate's complaint "is of a sensitive nature and the inmate fears possible repercussions," the inmate may send the appeal to the Department Commander through the mail. (*Id.*). The Department Commander must send a receipt and a reply to the inmate within ten working days. (*Id.*). "The Department . . . maintain[s] an electronic grievance log of complaints and appeals." (*Id.*).

**b. Exhaustion Analysis**

Defendants maintain that dismissal for failure to exhaust administrative remedies is warranted because Plaintiff knew of and frequently used the grievance process but did not complete the process with respect to any complaint he lodged between August 13, 2021, and November 30, 2021. (Doc. 60 at 4). They further contend "that despite his proficiency and access to make requests, seek permission to grieve and thereafter file grievances, Plaintiff made no grievance mentioning,

[4] A "Responsible Health Authority or designee" responds to "inmate grievances/complaints related to healthcare services." (*Id.* at 2–3).

involving or related to conduct of [Defendants]." (*Id.*). They argue that the claims in Plaintiff's complaint are barred under the PLRA because Plaintiff failed "to not only commence the grievance process but also perfect an appeal to the highest administrative level in order to exhaust the mandatory administrative remedies available for each claim . . . ." (*Id.* at 8).

In response, Plaintiff maintains that: 1) exhaustion of administrative remedies cannot be addressed at the motion to dismiss stage because "exhaustion is not a pleading requirement"; and 2) the grievance process was unavailable to him because Defendants would not allow him to leave his cell to use the kiosk, and he had to ask Corp. Andrew for permission to file a grievance against him for his mistreatment of Plaintiff. (Doc. 68 at 1–2).

Initially, Plaintiff's first argument fails because, as discussed above, a defense of failure to exhaust administrative remedies is properly raised in a motion to dismiss. *See Bryant*, 530 F.3d at 1374-75 ("Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense ... is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." (internal quotation marks omitted)).

Concerning Plaintiff's second argument—that PCJ's grievance process was not available to him—the Court finds that the grievance process was available to him.

Plaintiff's allegations regarding his attempts to exhaust his available administrative remedies, accepted as true, preclude dismissal of the claims against Defendants at the first step of the *Turner* analysis. 541 F.3d at 1082.

Proceeding to the second step, the Court considers Defendants' arguments regarding exhaustion and makes specific findings to resolve the disputed factual issues related to exhaustion. *See Jackson v. Griffin*, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are questions of fact that can bar dismissal at *Turner*'s first step). In considering the availability of administrative remedies for exhaustion of Plaintiff's claims, the Court finds that Plaintiff was able to access the electronic grievance system (kiosk) to make requests, seek permission to grieve, and thereafter file grievances.

Defendants' exhibits supporting their motion to dismiss establish the existence of a grievance procedure at the PCJ. (Doc. 60−1 at 2, ¶ 3; Doc. 60−2). The grievance procedure is made available to inmates as part of the Inmate Handbook and during the admission orientation process. (Doc. 60−2 at 1, Section III, A; Doc. 60−3 at 28−29, Section XXIV). Defendants also explain how the PCJ's grievance procedure works, including how inmates file grievances and the grievance appeal process. (Doc. 60−1 at 2, ¶¶ 5-8).

As for Plaintiff's utilization of the PCJ's grievance procedure, Defendants contend that during the period relevant to the claims alleged in Plaintiff's Second

Amended Complaint—August 13, 2021, through November 30, 2021—he "submitted 57 Inmate Requests via Kiosk submission[,] . . . . 6 Permissions to file Grievances on various matters including classification/housing, one general medical permission and two permissions related to a disciplinary report[,] . . . . [and one grievance] related to housing location within the jail . . . filed . . . on September 14, 2021 and denied by staff on September 15, 2021 . . . ." (Doc. 60−4 at 2, ¶¶ 4−6). Defendants provide copies of those Requests, Permissions, and Grievances, which were filed during the very period Plaintiff claims he did *not* have access to the grievance procedure—August 13, 2021, through November 30, 2021. (*Id.* at 4−45). Plaintiff filed requests on 8/16/2021, 8/18/2021, 8/19/2021 (2), 8/20/2021 (3), 8/21/2021 (2), 8/22/2021 (4), 8/23/2021, 8/25/2021, 8/30/2021, 9/2/2021 (3), 9/8/2021, 9/14/2021 (2), 9/15/2021, 9/16/2021, 9/18/2021, 9/22/2021, 9/24/2021 (3), 9/27/2021, 10/4/2021, 10/14/2021, 10/15/2021, 10/17/2021, 10/18/2021 (2), 10/20/2021, 10/22/2021 (3), 10/25/2021, 10/26/2021(3), 10/30/2021, 11/3/2021, 11/11/2021, 11/15/2021, 11/19/2021 (3), 11/20/2021 (4), 11/22/2021 (2), and 11/23/2021. (*Id.*). He filed permissions to file grievances on 9/12/2021, 11/11/2021, and 11/22/2021 (4). (*Id.*). And he filed a grievance on 9/14/2021, which was denied. (*Id.* at 17−19). Plaintiff filed no grievance appeals. (Doc. 60 at 4; Doc. 60−4 at 2−3).

In his Second Amended Complaint, Plaintiff swears under penalty of perjury (*see* Doc. 40 at 11) that he filed grievances about the facts in the complaint. (*Id.* at 7).

But he also makes the vague and self-serving assertion that if he failed to file a grievance, it was "because they would not let me." (*Id*. at 8). And in his response to the motion to dismiss, he asserts, again under penalty of perjury, that the grievance process was unavailable to him because Defendants would not allow him to leave his cell to use the kiosk to submit grievances, and he had to ask Corp. Andrew for permission to file grievances about Corp. Andrew's alleged mistreatment. (Doc. 68 at 2–3).

"An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief." *Abram v. Leu*, 759 F. App'x 856, 860 (11th Cir. 2019) (citing *Ross*, 578 U.S. at 644). However, Plaintiff's allegation that Defendants would not allow him out of his cell to use the kiosk to submit grievances during the time relevant to the claims in his Second Amended Complaint is belied by Defendants' exhibits that show Plaintiff used the kiosk on thirty-six different days to submit sixty-five requests, requests for permission to file grievances, or grievances. (Doc. 60–4). It is clear that Plaintiff had access to the kiosk and frequently used it.

By asserting that he had to ask Corp. Andrew for permission to file a grievance against Corp. Andrew, Plaintiff implicitly contends that the grievance process was not available to him because he was intimidated by Corp. Andrew. To establish that the grievance process was unavailable based on intimidation or threats, a plaintiff must satisfy two conditions: "(1) the threat actually did deter the plaintiff inmate from

lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Turner*, 541 F.3d at 1085.

Plaintiff fails to satisfy the first condition. He does not contend that he was actually deterred from submitting any grievances by Corp. Andrew, and the Defendants' exhibits demonstrate that he was not actually deterred. Plaintiff submitted numerous requests, requests for permission to file grievances, and at least one grievance. Because Plaintiff was not actually deterred from using the grievance process, his argument that he was intimidated into not using it fails.

Moreover, Plaintiff's assertion that he had to ask Corp. Andrew for permission to file a grievance against him is also contradicted by the evidence. PCJ's standard operating procedures direct "[t]he shift commander or shift supervisor" to approve or deny an inmate's request to file a grievance. (Doc. 60–2 at 2). Plaintiff fails to allege that Corp. Andrew was a shift commander or shift supervisor. And none of the six "Permissions" Plaintiff filed between August 13, 2021, and November 30, 2021, were approved or denied by Corp. Andrew. (Doc. 60–4 at 15, 35, 41–43). And even if Corp. Andrew was the person from whom Plaintiff needed permission to file a grievance, Plaintiff could have avoided Corp. Andrew by submitting his grievance to the Department Commander through the mail and explaining that he feared possible

repercussions from Corp. Andrew if he utilized the standard grievance process. (Doc. 60–2 at 2, ¶G.2.). Plaintiff fails to allege he attempted to use this available alternative procedure to exhaust his administrative remedies.

Having found that PCJ's grievance process was available to Plaintiff, the Court must decide whether the Defendants have met their burden to show that Plaintiff failed to exhaust his administrative remedies concerning the claims in his Second Amended Complaint. The Court concludes that Defendants have met their burden.

Defendants' exhibits establish that Plaintiff filed no grievances regarding his claims that Defendants failed to protect him from threats and harassment by other officers, retaliated against him for filing grievances and informing a judge about mistreatment at PCJ, and failed to treat his broken hand and mental health issues. (Doc. 60–4 at 4–45). He did, however, file a grievance concerning his housing assignment and "red dot" status, which was denied. (*Id*. at 17–18). But he never completed the grievance process because he failed to appeal the denial to the Department Commander. (*Id*. at 2, ¶8; 60–1 at 2, ¶6). By failing to appeal the denial of this grievance, Plaintiff failed to exhaust his administrative remedies on his housing assignment claim. *See Bryant*, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting *Johnson*, 418 F.3d at 1158 (internal quotation marks omitted))). Thus, the record establishes that Plaintiff failed to exhaust his

available administrative remedies regarding any claim raised in his Second Amended Complaint.

Accordingly, it is **ORDERED**:

1. Because Plaintiff has failed to exhaust his administrative remedies, Defendants' Motion to Dismiss (Doc. 60) is **GRANTED**.[5] This action is **DISMISSED** without prejudice.

2. The Clerk is **DIRECTED** to enter judgment for Defendants, terminate any pending motions as moot, and close the case.

**DONE and ORDERED in Tampa, Florida, on September 21, 2026.**

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

[5] Because the Court concludes that dismissal is warranted for failure to exhaust administrative remedies, this Court need not address Defendants' other bases for dismissal.